| | |
|---|---|
| EDWARD ESTRADA,<br>        Petitioner, | |
| | No. 3:09cv1561 (SRU) |
| v. | |
| UNITED STATES OF AMERICA,<br>        Respondent. | |

## <u>RULING ON MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE</u>

Edward Estrada, appearing *pro se*, seeks to vacate, set aside, or correct his sentence

pursuant to 28 U.S.C. § 2255.  Estrada is confined at the Federal Correctional Institution

Schuylkill in Minersville, Pennsylvania, having been convicted by a jury and sentenced to 420

months in prison for conspiracy to distribute more than one kilogram of heroin in violation of 21

U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846.  *See United States v. Estrada*, Amended Judgment

on Resentencing (3:00cr227 (SRU) doc. # 1519).  Estrada, who was originally sentenced to a life

term for his crime, received this lower sentence after the Second Circuit remanded his case for

resentencing pursuant to *United States v. Booker*, 543 U.S. 220 (2005), and *United States v.

Crosby*, 397 F.3d 103 (2d Cir. 2005).  After his resentencing, Estrada's attorney — who

previously served as both trial and appellate counsel — appealed his new sentence, but not his

conviction, on several grounds.  *See United States v. Gonzalez*, 272 F. App'x 134 (2d Cir. 2008)

(unpublished summary order).  The Second Circuit affirmed Estrada's resentencing.  *Id.*

Estrada then petitioned the Supreme Court for a writ of certiorari.  His petition was denied

on October 6, 2008.  *Estrada v. United States*, 129 S. Ct. 205 (2008).  Less than a year later, on

October 1, 2009, Estrada filed the present motion to vacate, set aside, or correct his sentence

pursuant to 28 U.S.C. § 2255.

Estrada raises 24 separate claims for relief based on violations of the Constitution and ineffective assistance of both trial and appellate counsel. Estrada requests a new trial or, in the alternative, an opportunity to present additional evidence to the court regarding his claims.

## I.     Background

Edward Estrada was tried, along with several co-defendants, on multiple charges related to his participation in a narcotics distribution network centered in Bridgeport, Connecticut. Based on testimony from numerous co-conspirators and tape-recorded conversations between Estrada and a government informant named Joseph Butler, a jury convicted Estrada of conspiring to distribute more than one kilogram of heroin. Among the witnesses testifying against Edward Estrada was his brother, Frank Estrada, the leader of the distribution ring.

## II.    Standard of Review

"A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States . . . may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255. Estrada presents two types of constitutional claims that, he argues, warrant setting aside his sentence. His first six claims for relief allege that there were structural deficiencies in his trial. The remaining claims for relief allege that Estrada's attorney, who represented him at trial and on appeal, was ineffective in violation of his Sixth Amendment right to counsel.

The government argues that Estrada's six structural claims are procedurally defaulted because Estrada did not raise them at trial or on direct appeal. In general, petitioners who have failed to present a claim on direct appeal may not raise that claim on collateral review absent a

showing of cause and prejudice. *Yick Man Mui v. United States*, 614 F.3d 50, 54 (2d Cir. 2010).

A petitioner may raise a claim of ineffective assistance of counsel, however, even if that claim

was not raised previously at trial or on appeal. *Massaro v. United States*, 538 U.S. 500, 504

(2003). Thus, although the government is correct that claims not raised on direct appeal are

ordinarily procedurally defaulted, claims one through six may reasonably be read as claims of

ineffective assistance of counsel that are not defaulted despite not being raised on direct appeal.

*See Yick Man Mui*, 614 F.3d at 57 (permitting ineffective assistance claims on collateral review

that were not decided on direct appeal). All of Estrada's claims are therefore properly before the

court and will be decided according to the familiar Sixth Amendment standard for ineffective

assistance of counsel.

Estrada challenges his attorney's performance both at trial and on appeal. To succeed,

Estrada must demonstrate (1) that his counsel's performance "fell below an objective standard of

reasonableness," and (2) "that the deficient performance prejudiced the defense." *Strickland v.

Washington*, 466 U.S. 668, 687-91 (1984). The mere possibility that a particular deficiency might

have prejudiced the defendant is not enough. Rather, "[t]he defendant must show that there is a

reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

would have been different. A reasonable probability is a probability sufficient to undermine

confidence in the outcome." *Id.* at 694. Moreover, a claim alleging ineffective assistance of

appellate counsel on the basis of counsel's omission of an issue will fail unless the petitioner can

show "that counsel omitted significant and obvious issues while pursuing issues that were clearly

and significantly weaker." *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994).

**III.  Discussion**

     A.     <u>Failure to Object to Denial of Public Trial</u>

Estrada's first claim alleges that trial counsel was ineffective for failing to object to or appeal the court's decision to use a special audio system to play back certain recordings during his trial, and that this ineffectiveness denied Estrada the Sixth Amendment right to a public trial. *See* Pet. Br. 9-10.  The recordings were played over headphones to the judge, the parties, and the jurors, but were not broadcast over the court's speaker system because of technical difficulties. *See* Tr. 3/12/2002 at 242.  Neither the government nor the defense objected to the use of this system at trial.  *Id.*

The use of headphones to play back evidence for the jury does not violate the right to a public trial, even if such evidence cannot be heard simultaneously by the public.  *See United States v. Lnu*, 575 F.3d 298, 306-08 (3d Cir. 2009), *cert. denied*, 130 S. Ct. 771 (2009); *United States v. Plummer*, 178 F.3d 1288 (4th Cir. 1999) (per curiam) (unpublished opinion) (citing *D'Aquino v. United States,* 192 F.2d 338, 365 (9th Cir. 1951)).  As those courts recognized, the recordings at issue in Estrada's case are no different from other kinds of evidence, such as photographs or documents, that are frequently available at trial only to the parties, the judge, and the jury.  As is the case with other forms of documentary evidence, the fact that the public is denied simultaneous access to the audio recordings does not rise to the level of a Sixth Amendment public trial violation.  Therefore, Estrada's counsel's failure to object to the use of headphones or to appeal that decision was not objectively unreasonable, and the claim fails the first *Strickland* prong.

B.     Failure to Object to *Sua Sponte* Dismissal of Juror

Estrada's second claim alleges that his counsel was ineffective for failing to object to or appeal the dismissal of a juror by the court without alerting the parties beforehand.  *See* Pet. Br. 14.  Although criminal defendants have the right "to be present at all stages of the trial where [their] absence might frustrate the fairness of the proceedings," *Cohen v. Senkowski*, 290 F.3d 485, 489 (2d Cir. 2002) (quoting *Faretta v. California,* 422 U.S. 806, 819 n.15 (1975)), that right is only relevant  "to the extent that a fair and just hearing would be thwarted by his absence, and to that extent only," *Clark v. Stinson*, 214 F.3d 315, 323 (2d Cir. 2000) (quoting *Snyder v. Massachusetts,* 291 U.S. 97 (1934)).  Here, the juror in question was dismissed *sua sponte* by the court shortly after deliberations began because news that a close family member was "on her death bed" rendered the juror so emotionally distraught that she had broken into tears.  Tr. 3/22/2002 at 95-96.  There is no indication that Estrada's absence from court when the juror was dismissed in any way diminished the fairness of the hearing, especially since jury deliberations had barely begun and the court indicated its intentions to replace the juror with an alternate and instruct the jury to restart deliberations from the beginning.  *See id.* at 96.  Under those circumstances, it was not unreasonable for Estrada's counsel to withhold an objection to the dismissal of the juror and to forgo raising the issue on appeal.

C.     Failure to Object to Ruling on Impeachment by Prior Convictions

Estrada's third claim alleges that his counsel was ineffective at trial and on appeal for failing to challenge the court's ruling that evidence of the details about Frank Estrada's prior convictions (as opposed to the facts of conviction) could not be introduced to impeach him.  *See* Pet. Br. 18.  Estrada's counsel was actively involved in evidentiary disputes related to the

impeachment evidence offered against Frank Estrada. Indeed, Edward Estrada's counsel raised a number of objections with respect to the scope of impeachment evidence that the court admitted during Frank Estrada's testimony. *See* Tr. 3/12/2002 at 247-56. In addition, although Estrada's counsel did not object to this particular ruling at trial or on appeal, counsel for Estrada's co-defendant made the same objection Estrada believes his counsel should have made and was overruled. *See id.* at 353-54. Thus, it was not unreasonable for Estrada's counsel to refrain from raising the exact same objection during the same proceeding.

Counsel was not unreasonable for electing not to object to the introduction of details concerning Frank Estrada's prior felony convictions. When a prior felony conviction is used to impeach a witness, Rule 609(a)(1) of the Federal Rules of Evidence "requires district courts to admit the name of a conviction, its date, and the sentence imposed unless the district court determines that the probative value of the evidence 'is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.'" *United States v. Estrada*, 430 F.3d 606, 620-21 (2d Cir. 2005) (quoting Fed. R. Evid. 403). Further details would have gone "far beyond what was necessary to establish a criminal conviction for the purpose of impeaching credibility," and would have been inadmissible due to their highly prejudicial nature. *United States v. Tomaiolo*, 249 F.2d 683, 687 (2d Cir. 1957). Those details were more prejudicial than probative and their exclusion did not violate Estrada's Sixth Amendment confrontation rights because Estrada was not prohibited from "exposing to the jury the facts from which jurors, as the sole triers of fact and credibility, could *appropriately draw inferences* relating to the reliability of the witness." *Estrada*, 430 F.3d at 621 (quotation omitted) (emphasis added). Thus,

counsel's decision not to object to the scope of Frank Estrada's impeachment did not fall below an objective standard of reasonableness.

Finally, even if the court erred by limiting the impeachment of Frank Estrada, counsel's decision not to object or appeal the court's decision did not prejudice Estrada. The court allowed defense counsel ample opportunity to impeach Frank Estrada on other grounds, and there was considerable other incriminating evidence admitted against Estrada at trial. Evidentiary decisions are affirmed if they are harmless, i.e., "if there is a fair assurance that the jury's judgment was not substantially swayed by the error." *Estrada*, 430 F.3d at 622. In light of the admission of facts showing Frank Estrada had previously been convicted of felony offenses, counsel's extensive impeachment and cross-examination of Frank Estrada on other grounds, and the sum of the incriminating evidence against Estrada, any restriction on the impeachment of Frank Estrada on the basis of his criminal history was harmless. Counsel's failure to object or appeal this issue therefore did not prejudice her client, and Estrada's ineffective assistance claim fails on both *Strickland* prongs.

D.     <u>Failure to Appeal Decision to Deny Subpoenas of Witnesses' Prison Records</u>

Estrada's fourth claim alleges that the trial court violated his Fifth Amendment right to due process when it denied a request to subpoena the prison records of two government witnesses, Jose Lugo and Ishmail Padilla. *See* Pet. Br. 21-22. Because, by Estrada's own admission, his counsel requested those documents at trial, the court treats this claim as an allegation that counsel was ineffective for failing to appeal the court's denial of those subpoenas. Estrada claims that the subpoenas would have yielded evidence the defense could have used to paint the two witnesses as violent, aggressive individuals who "have been involved in various narcotic activities . . . [and]

have on numerous occasions falsely accused others for their offenses."  Pet. Br. 22.

Admission of the subpoenaed records would not have been permitted under the Federal Rules of Evidence, however.  Under Rule 608(b) of the Federal Rules of Evidence, Estrada was not permitted to introduce extrinsic evidence of specific acts of witnesses' untruthfulness for the purpose of impeachment.  Estrada does not allege that his attorney failed to cross-examine the government's witnesses about their convictions or their propensity and motive to falsely accuse others.  *See* Fed. R. Evid. 608(b) (permitting specific incidents to be "inquired into on cross-examination").  Therefore, any appeal of the court's ruling would likely have been fruitless. Estrada's attorney was not ineffective for declining to appeal that ruling.

E.      Failure to Object to Jury Instructions

Estrada's fifth claim relates to the jury instructions delivered at trial.  *See* Pet. Br. 24.  The court reads Estrada's claim of "constitutional error" as a claim that his attorney should have objected to or appealed the jury charge because, in Estrada's view, the charge was ambiguous and therefore violated Estrada's Sixth Amendment right to a jury trial.  *See* Pet. Br. 24-25.

When there is a question whether a jury instruction is too ambiguous, the proper inquiry on appeal is "whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way that prevents the consideration of constitutionally relevant evidence."  *Boyde v. California*, 494 U.S. 370, 380 (1990).  Even if a single specific instruction misstates the applicable rule of law, the Supreme Court has held that relief may only be granted if a court, upon "review[ing] the instructions as a whole" finds that "the entire charge" fails to set out the correct rule."  *California v. Brown*, 479 U.S. 538, 541 (1987); *accord United States v. Pipola*, 83 F.3d 556, 563 (2d Cir. 1996) (rejecting defendant's argument that jury charge was erroneous because

"the instructions as a whole 'delivered a correct interpretation of the law.'" (quoting *Brown*, 479 U.S. at 541)).

In the present case, the jury instructions accurately reflected the applicable law. The court first instructed jurors to find "the weight or quantity of the substance containing a detectable amount of specific narcotic at issue that can be attributed to the particular defendant." Tr. 3/27/2002 at 31. The court further instructed jurors that for each defendant, they should determine the amount of cocaine or heroin "that the government has proven can be attributed to that defendant's involvement in the charged conspiracy." *Id.* at 53. The court instructed the jury that "[q]uantities of narcotics are attributable to a defendant if that defendant took actions in furtherance of the conspiracy with respect to those narcotics or if it was reasonably foreseeable to that defendant that a coconspirator would do so." *Id.* at 54. Finally, the court reiterated that the jury was to determine both (1) "the amount of specific narcotic at issue in each conspiracy that the government has proven beyond a reasonable doubt, is attributable to each defendant" and (2) whether "the defendant's participation in the conspiracy involved one thousand grams or more of heroin." *Id.* at 56. Those instructions were correct. *See United States v. Diaz*, 176 F.3d 52, 99 (2d Cir. 1999) ("[U]nder the *Pinkerton* co-conspirator doctrine . . . a conspirator can be held responsible for the substantive crimes committed by his co-conspirators to the extent those offenses were reasonably foreseeable consequences of acts furthering the unlawful agreement . . . ." (quotation omitted)); *United States v. Romero*, 897 F.2d 47, 51-52 (2d Cir. 1990) (sustaining defendant's conviction of conspiracy to distribute more than five kilograms of cocaine on the basis that co-conspirators' drug crimes were "reasonably foreseeable consequences" of the conspiracy).

Estrada nevertheless challenges those instructions. He argues that the instructions relieved the government of its burden to prove that the drug quantities in question were "attributable to 'each defendant.'" Pet. Br. 26. He also argues that the court's use of the phrase "detectable amount" relieved the government of the burden of proving that the defendant's involvement exceeded one kilogram of heroin. *Id.* Perhaps if each individual sentence of the jury instruction were viewed in isolation, Estrada's objections might have some merit. When read as a whole, however, the jury charge clearly and unambiguously states the correct rule of law. The instructions reiterate several times that the jury is to determine both "the amount of specific narcotic . . . attributable to each defendant" and whether "the defendant's participation in the conspiracy involved one thousand grams or more of heroin." Tr. 3/27/2002 at 56. Furthermore, the instructions correctly explain the federal conspiracy doctrine as it applies to drug crimes. *Compare id.* at 54 ("Quantities of narcotics are attributable to a defendant if that defendant took actions in furtherance of the conspiracy with respect to those narcotics or if it was reasonably foreseeable to that defendant that a coconspirator would do so."), *with United States v. Bruno*, 873 F.2d 555, 560 (2d Cir. 1989) (holding that a co-conspirator "can be held responsible for the substantive crimes committed by his co-conspirators to the extent those offenses were reasonably foreseeable consequences of acts furthering the unlawful agreement, even if he did not himself participate in the substantive crimes"). Therefore, Estrada's complaints concerning the wording of the jury charge are without merit.

Because the jury charge, when viewed as a whole, was unambiguous and correctly stated

the applicable law, there is no "reasonable likelihood" that the jury misapplied the law.[1]

Therefore, it was neither unreasonable nor prejudicial for Estrada's attorney to decline to object to the jury charge at trial or to challenge it on appeal.

    F.    Failure to Appeal Conviction Based on Insufficiency of Evidence

Estrada alleges in his sixth claim that his conviction was based on insufficient evidence. Although Estrada's attorney made both oral and written motions for acquittal based on insufficient evidence, *see* Tr. 3/22/2002 at 156; Tr. 3/26/2002; doc. # 957, the court reads Estrada's claim of "Due Process Error," *see* Pet. Br. 28, to allege that his attorney provided ineffective assistance by failing to appeal the court's decisions to deny those motions.

That claim is without merit. In reviewing a claim for sufficiency of the evidence, the court "view[s] the evidence in the light most favorable to the government, assuming that the jury resolved all questions of witness credibility and competing inferences in favor of the prosecution." *United States v. Abu-Jihaad*, 630 F.3d 102, 134 (2d Cir. 2010). Moreover, "[a] defendant mounting a sufficiency challenge . . . bears a very heavy burden . . . because a court must uphold a jury verdict so long as *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 135 (quotations omitted). Numerous witnesses, including Frank Estrada, testified at trial that Edward Estrada was involved over many

---

[1] Estrada makes much of the fact that, early on in its deliberations, the jury requested clarification regarding how the law attributes liability for specific drug quantities in a conspiracy. *See* Pet. Br. 26 (citing Tr. 4/2/2002 at 46-47). But the mere fact that a jury is initially confused upon receiving a lengthy jury charge in a complex criminal case does not prove that the charge is deficient. In any event, the court — with the consent of all parties — briefly clarified its instructions and referred the jury back to the specific section in the charge that dealt with attribution of drug quantities to defendants. *See* Tr. 4/2/2002 at 47. Because the charge adequately stated the law, the court's instruction that the jury review the relevant portion of the charge was not erroneous and Estrada's attorney was not ineffective for not challenging it.

years in a conspiracy to distribute far more than one kilogram of heroin.  The sum of that

evidence would have permitted a reasonable trier of fact to find Estrada guilty beyond a

reasonable doubt. Therefore, it was not unreasonable for Estrada's appellate attorney to decide

that a further challenge to the sufficiency of the evidence on appeal would have been fruitless.

For that reason, her representation of Estrada on this issue was not ineffective.

       G.      <u>Failure to Challenge Conviction on Speedy Trial Grounds</u>

Estrada's seventh claim is that his attorney provided ineffective assistance by failing to

object to the delay in his trial date under the Speedy Trial Act, 18 U.S.C. §§ 3152, *et seq*.  That

claim is meritless.  On October 18, 2001, the court entered in writing a speedy trial order finding

that, under 18 U.S.C. § 3161(h)(8)(A) (now codified at 18 U.S.C. § 3161(h)(7)(A)), a continuance

served the ends of justice and outweighed the interest of the public and defendant in a speedy

trial.  Speedy Trial Order (3:00cr272 (SRU) doc. # 723).  The court found that the unusual and

complex nature of the case — in particular, the severance of the case into four parts, as well as the

large number of defendants, indictments, and motions — warranted a continuance.  Because the

court's exclusion of time between June 20, 2001, the date of Estrada's third superseding

indictment, and the end of his trial was permitted under 18 U.S.C. § 3161(h)(7)(A), Estrada's

counsel did not perform deficiently or prejudice Estrada when she failed to object to or appeal the

court's Speedy Trial Act order.

       H.      <u>Failure to Object to Use of the Joseph Butler Tapes</u>

Estrada's eighth, ninth, and tenth claims all relate to the introduction of tape recordings

that were made by a cooperating witness, Joseph Butler.  *See* Pet. Br. 34-44.  Estrada argues that

counsel should have raised a series of objections to the introduction of the tapes based on their

inaudibility and the potential for unfair prejudice against him. But the mere fact that counsel could have made those objections does not render her assistance constitutionally ineffective. Counsel objected (unsuccessfully) to the use of transcripts in conjunction with the tapes, *see* Tr. 3/12/2002 at 5-8, and it was not unreasonable for her to elect that strategy instead of the one petitioner feels she should have pursued. Under *Strickland*, "the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" 466 U.S. at 689 (quotation omitted). Here, counsel's decision not to challenge the admissibility of the tapes was a reasonable trial strategy. Furthermore, Estrada has not demonstrated that he was prejudiced by his attorney's decision. In Estrada's own words, the tapes contained "no substantial evidence," Pet. Br. 42, and were "unintelligible" and inaudible, *id.* at 34.

In addition to those claims, Estrada argues in his seventeenth claim that his counsel should have objected to the admission of the Joseph Butler tapes because, according to Estrada, they were inadmissible under the hearsay exception for co-conspirator statements codified at Rule 801(d)(2)(E) of the Federal Rules of Evidence. *See* Pet. Br. 63. Estrada claims that his own statements, made to Joseph Butler and played for the jury at trial, were not made to a "co-conspirator" because when Estrada made the statements Butler was already working for law enforcement officers and his activities therefore were "not in furtherance of the conspiracy." *Id.* Nevertheless, regardless of Butler's status at the time the recording was made, Estrada's own statements were admissible as party admissions. *See* Fed. R. Evid. 801(d)(2)(A). Given that the challenged statements were admissible, it was neither unreasonable nor prejudicial for Estrada's counsel to forgo an objection to that testimony.

I.      Failure to Pursue an Intoxication Instruction

Estrada's eleventh claim alleges that trial counsel was ineffective because she failed to call an expert on intoxication or to request an intoxication instruction from the court.  *See* Pet. Br. 45.  This claim is without merit because it is highly unlikely that an expert on intoxication would have altered the outcome in Estrada's case.  Estrada was accused of participating in a wide-ranging drug conspiracy that spanned nearly a decade.  Even if, on occasion, Estrada participated while he was "high on drugs," Pet. Br. 45, it strains credulity to believe that a jury would have acquitted Estrada because he was voluntarily intoxicated at various times during the lengthy span of the conspiracy.  More importantly, it was not unreasonable for Estrada's counsel to conclude that requesting the instruction or seeking out a witness to testify about the effects of drug intoxication would have been unsound trial strategy.  *See Diaz*, 176 F.3d at 113 (holding that counsel was not ineffective for failing to present diminished capacity defense because that decision was "sound trial strategy").

J.      Failure to Appeal the Court's Decision on Severance

Estrada's twelfth claim alleges that counsel failed to seek severance for Estrada from his co-defendants and the court's failure to grant severance was in error.  *Id.* at 48-50.  Estrada's counsel did, in fact, seek severance, *see* Motion by Edward Estrada to Sever (3:00cr227 (SRU) doc. # 557), and the court agreed to sever the trial into four components, *see* Ruling on Motions to Sever, to Continue, and for Extensions of Time (3:00cr227 (SRU) doc. # 592).  Therefore, the only colorable claim on this issue is that Estrada's counsel was ineffective because she failed to appeal the court's ruling on severance.  On appeal, a claim that the trial court erred by failing to sever Estrada's case differently would have been "virtually unreviewable."  *United States v.*

*Friedman*, 854 F.2d 535, 563 (2d Cir. 1988) (quoting *United States v. Stirling*, 571 F.2d 708, 733 (2d Cir. 1978)); *accord United States v. Miller*, 116 F.3d 641, 679 (2d Cir. 1997).  Estrada would have been required to show the appellate court a "prejudice so severe that his conviction constituted a miscarriage of justice, and that the denial of his motion constituted an abuse of discretion." *Miller*, 116 F.3d at 679 (quoting *United States v. Rosa*, 11 F.3d 315, 341 (2d Cir. 1993)).  In light of that high threshold, it was not unreasonable for Estrada's counsel to conclude that appealing the severance order would have been unsound appellate strategy.

      K.      <u>Failure to Object to Jury Access to Physical Evidence</u>

Estrada's thirteenth claim alleges that Estrada's counsel was ineffective because she "did not make any meaningful objection" to the court's decision to allow jurors access to the drugs and firearms that were introduced as evidence in the case.  *See* Pet. Br. 51.  Yet the trial record clearly shows that Estrada's counsel argued against sending weapons and drugs to the jurors, to no avail, Tr. 3/27/2002 at 88-89, and counsel's decision not to appeal this ruling was neither deficient nor prejudicial.  During deliberations, "[p]hysical evidence . . . is 'routinely sent into the jury room for inspection by jurors outside the presence of the court.'" *United States v. Walker*, 205 F.3d 1327 (2d Cir. 2000) (unpublished opinion) (quoting *United States v. Grant*, 52 F.3d 448, 448-49 (2d Cir. 1995)).  The claim is without merit.

      L.      <u>Failure to Object to Use of Chart Paper by the Jury</u>

Estrada's fourteenth claim alleges that trial counsel was ineffective because she failed to object to the use of "chart paper and tape to hang the paper with." Pet. Br. 55.  Estrada argues that the use of chart paper in the jury's deliberations amounted to the introduction of extrinsic evidence that was not introduced at trial.  *Id.*  Estrada's claim is meritless.  Blank chart paper does

not introduce extrinsic "evidence" into a jury room any more than does a juror's notes taken at trial in order to refresh his or her recollection. *Cf. United States v. Marquez*, 449 F.2d 89, 93 (2d Cir. 1971) ("It has been well established in this circuit that it is within the trial court's discretion to allow the jury to take notes."). Nor is it plausible that the jury's use of blank chart paper could have altered its verdict with regard to Estrada. Therefore, it was neither unreasonable nor prejudicial for Estrada's counsel to refrain from objecting to this jury request at trial or on appeal.

M.  Failure to Object to Character Evidence

Estrada fifteenth claim asserts that counsel "failed to raise proper objections" to the introduction of evidence about his character or prior bad acts. *See* Pet. Br. 57-59. The first type of character evidence Estrada claims should have been objected to related to Estrada's participation in gangs and gang violence. *See* Pet. Br. 58. That evidence, however, was introduced for a relevant purpose: it served as direct evidence of Estrada's participation in a conspiracy to distribute illegal drugs. Therefore, any objection by Estrada's counsel on the basis of Federal Rule of Evidence 404(b) would have been fruitless. Similarly, evidence that Estrada and his co-conspirators possessed firearms, *see* Pet. Br. 58, was not impermissible character evidence; rather, it was direct evidence that could have led the jury to infer that he was involved in a conspiracy to possess and distribute illegal drugs. *See United States v. Mitchell*, 328 F.3d 77, 83 (2d Cir. 2003) ("[O]ur circuit has long recognized the connection between drug trafficking and firearms, repeatedly permitting firearms into evidence as proof of narcotics conspiracies because drug dealers commonly keep firearms on their premises as tools of the trade." (quotation omitted)). Finally, testimony offered by the government about the state and contents of Estrada's

apartment, *see* Tr. 3/22/2002 at 35-37, was relevant to demonstrate that Estrada benefitted from his participation in the drug conspiracy with which he and his co-defendants were charged. Such evidence, too, would have been relevant to a proper purpose of connecting Estrada to the drug conspiracy, as opposed to merely arousing "class prejudice," Pet. Br. 58, in the minds of the jurors.

In any event, Estrada's attorney objected to the use of much of this evidence at trial and, in addition, filed a separate Rule 404(b) motion to exclude evidence of other crimes and prior bad acts. Motion in Limine by Edward Estrada (3:00cr272 (SRU) doc. # 691). Therefore, even if the court were to ignore the fact that failure to object did not prejudice the defense, the assistance of Estrada's attorney was not ineffective when she, in fact, objected to the very evidence Estrada now complains about. Estrada is not entitled to relief on his fifteenth claim.

N.      Failure to Object to "Prosecutorial Vouching"

Estrada's sixteenth claim alleges that defense counsel was ineffective because she failed to object to "prosecutorial vouching." *See* Pet. Br. 60-62. Estrada complains that the government "vouch[ed] for the cooperating witnesses's credibility," as well as for the credibility of law enforcement witnesses and the prosecutors themselves during summation. *Id.* at 60-61. As an initial matter, "[a]n improper remark by a prosecutor will justify a reversal . . . only if it causes the defendant substantial prejudice by so infecting the trial with unfairness as to make the resulting conviction a denial of due process." *United States v. Carr*, 424 F.3d 213, 227 (2d Cir. 2005) (quotation omitted). Moreover, "the government is allowed to respond to an argument that impugns its integrity or the integrity of its case, and when the defense counsel have attacked the prosecutor's credibility or the credibility of the government agents, the prosecutor is entitled to

reply with rebutting language suitable to the occasion." *Id.* at 227 (quotation omitted).

Here, Estrada himself admits that the credibility of the government's witnesses had been effectively questioned at trial. *See* Pet. Br. 60. In this context, the government's comment on the credibility of its witnesses and the strength of its own case at summation was entirely proper and did not cause "substantial prejudice" to the defendant's case. The prosecutor did not express his personal belief regarding the witnesses' credibility, but relied on the evidence submitted at trial to argue why, despite Estrada's impeachment, the government's witnesses were believable. Therefore, any objection at trial or on appeal would not have resulted in a different outcome for the petitioner. For that reason, Estrada's counsel's failure to challenge these statements was neither objectively unreasonable nor prejudicial to Estrada's case.

O.      Failure to Appeal Sentencing Enhancements

Finally, Estrada raises several claims related to his counsel's performance at sentencing. The claims allege that counsel failed to adequately challenge the presentence report's statement that 30 kilograms of heroin could be attributed to Estrada for purposes of sentencing, Pet. Br. 68 (claim 18); failed to object to the "leadership enhancement," Pet. Br. 70 (claim 19); failed to object to a "use of minor enhancement," Pet. Br. 73 (claim 20); failed to object to a "gun enhancement," Pet. Br. 75 (claim 21); failed to object to the 21 U.S.C. § 851 enhancement, Pet. Br. 77 (claim 22); failed to argue for a "minor role" reduction, Pet. Br. 79 (claim 23); and failed to challenge the disparity of petitioner's sentence from the sentences his co-defendants received, Pet. Br. 80 (claim 24). Of these, all but two — claims 21 and 22 — were raised by Estrada's counsel and rejected on appeal. *See Gonzalez*, 272 F. App'x 134. Under the so-called "mandate rule," the court cannot grant habeas relief on those claims because they have already been decided

on direct review.  *Yick Man Mui*, 614 F.3d at 53.

Although Estrada did not challenge the gun enhancement on appeal, it cannot be said that his attorney's failure to pursue that avenue of attack was objectively unreasonable.  An attorney need not pursue all potential issues on appeal; rather, the decision concerning what issues to appeal is left to the professional discretion of the attorney.  Such decisions may only be second-guessed in a collateral attack if it appears that the attorney "omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker."  *Mayo*, 13 F.3d at 533.  The other claims pursued by Estrada's attorney were not "clearly and significantly weaker" than the omitted gun enhancement claim.  Evidence at trial clearly showed that Estrada used a gun in the course of his crimes.  Had his counsel raised this issue on appeal, Estrada would not have obtained relief.  Therefore, in addition to not being deficient, counsel's decision not to appeal the gun enhancement to Estrada's Guidelines calculation was not prejudicial.

Finally, Estrada's twenty-second claim rests on the premise that Estrada's attorney should have challenged the enhancement to Estrada's mandatory minimum sentence, which was increased because Estrada had been previously convicted of a "felony drug offense."  *See* 21 U.S.C. §§ 841(b)(1)(A) & 851.  Estrada relies on *United States v. Savage*, 542 F.3d 959 (2d Cir. 2008), which held that a violation of Conn. Gen. Stat. § 21a-277 may not necessarily be counted as a "controlled substances offense" under section 4B1.1 of the Unites States Sentencing Guidelines, to argue that his prior conviction for the sale of narcotics should not count as a "felony drug offense" for the purposes of his statutory enhancement.  Even assuming that Estrada's argument is correct, and his prior offense should not have enhanced his mandatory minimum sentence, his attorney was not ineffective because any failure to object to the section

851 information was harmless. Estrada was re-sentenced to 420 months' imprisonment, 180 months more than his enhanced statutory minimum. At sentencing, the court did not rely on the mandatory minimum, but instead based its sentence on the seriousness of Estrada's offense, his involvement in the conspiracy, and mitigating factors such as his prior drug addiction and current health complications. Amended Judgment on Resentencing (3:00cr227 (SRU), doc. # 1519). A miscalculation of a mandatory minimum sentence is considered harmless error, and therefore not a basis for a new sentence, if the sentence does not rest on the mandatory minimum. *United States v. Deandrade*, 600 F.3d 115, 120 (2d Cir. 2010). In other words, Estrada was not prejudiced by his attorney's decision not the challenge the section 851 information. For that reason, counsel's failure to object to or appeal that enhancement did not constitute ineffective assistance.

## IV.     Conclusion

For the foregoing reasons, Estrada's 28 U.S.C. § 2255 motion to vacate, set aside, or correct his sentence is DENIED. A Certificate of Appealability will not issue because Estrada has failed to make a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Estrada has not demonstrated that "'reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Rhagi v. Artuz*, 309 F.3d 103, 106 (2d Cir. 2002) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)) (internal quotation marks omitted). The clerk shall close this case.

It is so ordered.

Dated at Bridgeport, Connecticut, this 16th day of June 2011.

                    /s/ Stefan R. Underhill
                    Stefan R. Underhill
                    United States District Judge